FILED'11 APR 27 15:22USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ROBERT G. ANGELINI, JR. and                                  Civil No.11-3011-CL
TERI L. ANGELINI,

               Plaintiffs,               **REPORT AND RECOMMENDATION**

      v.

BANK OF AMERICA d/b/a RECONTRUST
CO., a wholly owned subsidiary,

               Defendant.

CLARKE, Magistrate Judge.

This matter comes before the court on defendants' motion to dismiss (#3) and request for judicial notice (#5). Upon consideration of defendants' motion and the entire file, the court recommends the request for judicial notice be GRANTED IN PART AND DENIED IN PART, that defendants' motion to dismiss be GRANTED, and that plaintiffs' request for leave to file an amended complaint be GRANTED.

## **BACKGROUND**

Pro se plaintiffs Robert G. Angelini, Jr., and Teri L. Angelini ("plaintiffs") commenced this action on February 4, 2011, erroneously suing Bank of America, N.A. ("B of A"), and

Page 1 - REPORT AND RECOMMENDATION

ReconTrust Company, N.A. ("ReconTrust"), under the single designation "Bank of America dba

ReconTrust Co. a wholly owned subsidiary." (*See* Defs.' Req. for Judicial Notice ("RJN"), Dckt.

#5, pp. 1). The dispute in this case concerns the non-judicial foreclosure and subsequent sale of

800 Sunny Glen Way, Sunny Valley, Oregon. Plaintiffs' Complaint, while nearly

incomprehensible, makes the following identifiable factual allegations:

 In September of 2006, plaintiffs financed their acquisition of a second home, 800 Sunny

Glen Way ("the property"), by way of a $784,000 mortgage loan secured by a deed of trust to the

property. (Compl. at pp. 2;[1] Defs.' RJN, Ex. A). The deed of trust named American Brokers

Conduit ("ABC") as the lender, First American Title Insurance Company ("First American") as

the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary.

(Defs.' RJN, Ex. A pp. 1-2). ABC went bankrupt in 2008, after which plaintiffs' mortgage was

sold to Deutsche Bank National Trust Company ("Deutsche Bank"), which securitized plaintiffs'

mortgage and sold it on the secondary market. (Compl. at pp. 2-3). It was not disclosed to

plaintiffs that their mortgage loan had been securitized and sold. (Id. at pp. 5). Plaintiffs lost

their business and income. (Id. at pp. 3). B of A represented to plaintiffs that it held their

mortgage loan and subsequently engaged in debt collection activity on the loan. (Id.). B of A,

through ReconTrust, initiated foreclosure proceedings on the property, and the property was sold

at a foreclosure sale. (Id. at pp. 3).

 Plaintiffs' claims against B of A and ReconTrust are extremely difficult to discern.

Plaintiffs' ten-page Complaint consists primarily of extended quotations and excepts from cases

---

[1] Plaintiffs' Complaint lacks page numbers and enumerated paragraphs. Citations to the complaint refer to the page number contained in the e-filing header.

Page 2 - REPORT AND RECOMMENDATION

all over the nation, intermixed with commentary denouncing the mortgage lending industry as a

whole. Plaintiffs explicitly invoke the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et*

*seq.*, and the Fair Debt Collection Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, but do not name

either B of A or ReconTrust as a defendant for these claims. Scattered throughout the Complaint

are recurring allegations of fraud and assertions that the foreclosure of plaintiffs' property was

wrongful.

Plaintiffs' argument may be summarized as alleging that MERS had no authority to take

any action with regard to plaintiffs' mortgage loan; that plaintiffs' mortgage loan became void and

unenforceable when Deutsche Bank securitized and sold it; that the non-judicial foreclosure of

plaintiffs' property conducted by ReconTrust on behalf of B of A was unlawful because B of A

lacked any legal right to enforce the terms of plaintiffs' mortgage loan; and that defendants

deprived plaintiffs' of their property through fraud and in violation of their Constitutional due

process rights. Plaintiffs seek damages in an amount of $2,041,725. (Compl. at pp. 10).

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) on

grounds that plaintiffs have failed to state a claim upon which relief may be granted.

## STANDARDS

### I. REQUEST FOR JUDICIAL NOTICE

In ruling on a motion to dismiss for failure to state a claim, "a court may generally

consider only allegations contained in the pleadings, exhibits attached to the complaint, and

matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir.

2007). Accordingly, the court may take judicial notice of matters in the public record and

consider them without converting a Rule 12 motion to dismiss into a motion for summary

judgment. <u>U.S. v. 14.02 Acres of Land</u>, 547 F.3d 943, 955 (9th Cir. 2008) (*citing* <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001)); *see also* FED. R. EVID. 201(b) (judicially noticeable facts are those "not subject to reasonable dispute" because they are "generally known" within the jurisdiction of the court or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Thus, this court may take judicial notice of state court records, *see* <u>Kasev v. Molvbdenum Corp. of Am.</u>, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, *see* <u>Chandler v. U.S.</u>, 378 F.2d 906, 909 (9th Cir. 1967).

## II. MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See* <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974), *overruled on other grounds by* <u>Davis v. Scherer</u>, 468 U.S. 183, 104 S.Ct. 3012 (1984). In answering this question, the court must assume that the plaintiffs' allegations are true and must draw all reasonable inferences in the plaintiffs' favor. *See* <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).

A complaint need not make "detailed factual allegations," however, "a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007). To survive a motion to dismiss under FRCP 12(b)(6), plaintiffs must allege sufficient facts to "raise a right to relief above the speculative level." <u>Id.</u> at 555. That is, plaintiffs must show that their claims not merely conceivable, but plausible on its face. <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (*citing* <u>Twombly</u>, 550 U.S. at

570).  The determination of whether a complaint states a plausible claim for relief is a context specific task which requires the court "to draw on its judicial experience and common sense." Id. at 1950.

Pro se complaints are held to less rigorous standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) (per curiam).  Where the petitioner is pro se, the court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. Bretz v. Kelman, 773 P.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc); *see also* Hebbe v. Plilier, 611 F.3d 1202, 1205 (9th Cir. 2010) (declining to apply the Iqbal standard to pro se complaint, noting "Iqbal incorporated the Twombly pleading standard, and Twombly did not alter the courts' treatment of pro se filings, [therefore] we continue to construe pro se filings liberally").  Even though pro se pleadings should be construed liberally, they must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *See* Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).  Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (*quoting* Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).

//

Page 5 - REPORT AND RECOMMENDATION

## DISCUSSION

Plaintiffs request leave to amend should the court find their Complaint deficient. (Pl. Mem. iso Response to Mot. to Dismiss, Dckt. # 7, pp. 2). For the reasons stated below, the court recommends defendants' Request for Judicial Notice be GRANTED IN PART AND DENIED IN PART, that defendants' motion to dismiss be GRANTED , and that plaintiffs' request for leave to file an amended complaint be GRANTED, subject to the limitations set out below.

## I. REQUEST FOR JUDICIAL NOTICE

Defendants request that the court take judicial notice of five documents, attached as Exhibits A through E to the Request for Judicial Notice ("RJN"): (1) a copy of a deed of trust dated September 6, 2006 (Exhibit A); (2) an appointment of successor trustee dated February 2, 2009 (Exhibit B); (3) a notice of default and election to sell dated February 2, 2009 (Exhibit C); (4) a notice of sale proof of compliance (Exhibit D); and (5) a Trustee's Deed dated October 21, 2009 (Exhibit E). In the alternative, defendants argue that the court may court may consider these documents under the doctrine of incorporation.

### 1. Exhibit A

Exhibit A is a copy of a deed of trust in the amount of $784,000, dated September 6, 2006, identifying the "borrower" as "Robert G. Angelini Jr., Teri L. Angelini"; the "lender" as "American Brokers Conduit," a New York corporation; the "trustee" as "First American Title Insurance Company," and MERS, "a separate corporation that is acting solely as the nominee for Lender and Lender's Successors and assigns," as the "beneficiary." (RJN, Ex. A, pp. 1-2). The deed of trust and attached Second Home Riders bear what appear to be plaintiffs' signatures. (Id. at pp. 14, 18, 20).

Exhibits A is adjudicative in nature and potentially capable of accurate and ready determination. However, although defendants represent that Exhibit A has been recorded in the Josephine County recorder's office and references a recording date and document number, (Defs.' Req. for Judicial Notice, pp. 3, ¶ 1), Exhibit A does not bear any file stamp showing that it has been processed by the state court system. Instead, Exhibit A is stamped as a certified true copy and initialed by an agent of First American Title. Thus , Exhibit A is not accompanied by a proper certification that it is what it purports to be. *See* FED. R. EVID. 901(b)(7); FED. R. EVID. 902(2); FED. R. EVID. 1005. Therefore, defendants' request for judicial notice should be DENIED as to Exhibit A.

However, the court finds that Exhibit A may be considered under the doctrine of incorporation. The doctrine of incorporation by reference has been extended to situations where the complaint necessarily relies upon a document or the contents of a document are alleged in a complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance. *See* Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Parrino v. FHP. Inc., 146 F.3d 699, 705, 706 n. 4 (9th Cir. 1998), *rev'd by statute on other grounds.* Here, plaintiffs reference the deed of trust in their Complaint. (Compl. at pp. 2). Plaintiffs do not dispute the authenticity of Exhibit A. To the contrary, plaintiffs affirmatively state that they do not object to the court taking notice of Exhibit A. (Pls.' Resp. to Defs.' Req. for Judicial Notice, Dckt. # 8, pp. 1). Therefore, defendants' request that the court consider Exhibit A under the doctrine of incorporation should be GRANTED.

## 2. Exhibit D

Exhibit D is a 14-page document titled "Notice of Sale Proof of Compliance per ORS

205.234," which bears the recording stamp of the Josephine County Official Records, dated May 20, 2009, with a document number of 2009-008511. (RJN, Ex. D). The document consists of a cover page, an Affidavit of Mailing Trustee's Notice of Sale; an Affidavit of Mailing Notice to Grantor; proof of service; and the Trustee's Notice of Sale. Exhibit D is thus a publicly recorded document accompanied by the proper certification that it is what it purports to be and is properly subject to judicial notice. Therefore, defendants' request for judicial notice should be GRANTED as to Exhibit D.

### 3. Exhibits B, C, and E

The documents which defendants offer as Exhibits B, C, and E to the RJN are adjudicative in nature and potentially capable of accurate and ready determination. However, plaintiffs object to defendants' request for judicial notice as it pertains to Exhibits B, C, and D. Moreover, although defendants represent in the RJN that these documents are "publicly recorded documents" which have been recorded in the official records of Josephine County "as evidenced by the clerk's stamp," (Defs.' Req. for Judicial Notice, pp. 3-4, ¶ 2-3, 5), none of these Exhibits bear any file stamp showing that they have been processed by the state court system. Instead, the documents bear what appears to be the stamp of LSI Title Company of Oregon, LLC, certifying that the document "is a full, true and correct copy of the original recorded in the office of the county" and thereafter listing a recording fee, recording date, and document number. The name Robert Domingo appears on the stamp, apparently as the certifying agent of LSI. Put another way, none of these documents is accompanied by a proper certification that it is what it purports to be. *See* FED. R. EVID. 901(b)(7); FED. R. EVID. 902(2); FED. R. EVID. 1005. Consequently, the request for judicial notice should be DENIED as to Exhibits B, C, and E.

Page 8 - REPORT AND RECOMMENDATION

The court further finds that Exhibits B, C, and E may not be considered under the doctrine of incorporation. Plaintiffs do not reference Exhibits B, C, or E anywhere in their Complaint and are liberally construed as objecting to the authenticity of these documents. Moreover, while Exhibits B, C, and E may be relevant to plaintiffs' wrongful foreclosure claim, it is not clear that these documents are *crucial* to the claim. Plaintiffs allege that MERS failed to record all of the assignments of their trust deed as required by ORS § 86.735, specifically the transfer to Deutsche Bank, and the subsequent transactions which Deutsche Bank then engaged in. Exhibits B (appointment of successor trustee), C (notice of default and election to sell), and E (trustee's deed) do not address this argument. Therefore, the authenticity of these exhibits is contested, these exhibits are not referred to in plaintiffs' Complaint, and these exhibits are not clearly crucial to any of plaintiffs' claims. Therefore, defendants' request that the court consider Exhibits B, C, and E under the doctrine of incorporation should be DENIED.

### Conclusion

For the reasons stated above, the request for judicial notice should be GRANTED with respect to Exhibits A and D, and DENIED with respect to Exhibits B, C, and E.

## II. MOTION TO DISMISS

### 1. Plaintiffs' TILA Claim

Plaintiffs' attempt to state a TILA damages claim appears on page 5 of the Complaint. Plaintiffs apparently bring this claim pursuant to 15 U.S.C. §§ 1638(a)(9) and 1641(g). (Compl. at pp. 5, ¶ B-C).[2]

---

[2] Plaintiffs allege this claim against ABC and EquiFirst, not against either B of A or ReconTrust. (Compl. at pp. 5). Plaintiffs fail entirely to identify how EquiFirst is involved in this case. However, plaintiffs have identified ABC as B of A's predecessor in interest. Because

Page 9 - REPORT AND RECOMMENDATION

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit" through the "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a).  In addition to empowering the Federal Trade Commission to enforce its provisions, 15 U.S.C. § 1607(c), and imposing criminal liability on persons who wilfully and knowingly violate the statute, 15 U.S.C. § 1611, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations, 15 U.S.C. § 1640(a).

### A.  Claims under Section 1641(g)

In 2009 the Truth in Lending Act ("TILA") was amended to add, in relevant part, subsection (g) to 15 U.S.C. § 1641.  Helping Families Save Their Homes Act, Pub.L. No. 111-22, § 404, 123 Stat. 1632, 1649 (2009).  As amended, TILA requires that if a "mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" within thirty days.  15 U.S.C. § 1641(g).  Failure to comply with this notification provision can result in civil liability. Id. § 1640(a).

Plaintiffs appear to allege a violation under 15 U.S.C. 1641(g).  (Compl. at pp. 5, ¶ B (alleging that ABC violated TILA's "Mortgage Transfer disclosures in that it performed none of the required actions to notify Plaintiffs of any facts concerning the sale and transfer of the note and loan")).  Unfortunately for plaintiffs, this provision does not apply to their claims.  Section 404 did not become effective until May 20, 2009.  Plaintiffs had defaulted on their loan and

---

the identity of the defendants against whom plaintiffs allege this claim is not determinative of the outcome, the court liberally construes plaintiffs' complaint as alleging this claim against B of A.

foreclosure proceedings had been initiated prior to the enactment of Section 404. (*See* RJN, Ex.

D, pp. 8, showing trustee's notice of sale published March 30, April 6, April 13, and April 20 of

2009). As alleged by plaintiffs, all transfers and assignments of plaintiffs' mortgage loan

occurred prior to May 20, 2009, thus, these transfers were not subject to the notice provision

created by Section 404.[3]  Therefore, any attempt by plaintiffs to state a claim for violation of 15

U.S.C. § 1641(g) should be DISMISSED WITH PREJUDICE.

### B.  Claims under Section 1638(a)(9)

TILA requires that "[w]here the credit is secured, a statement that a security interest has

been taken in (A) the property which is purchased as part of the credit transaction, or (B) property

not purchased as part of the credit transaction identified by item or type." 15 U.S.C. §

1638(a)(9).  Failure to comply with this disclosure provision can result in civil liability.  15

U.S.C. § 1640(a).

Plaintiffs appear to allege a claim for both actual and statutory damages arising out of 15

U.S.C. 1638(a)(9) violation. (Compl. at pp. 5, ¶ B (alleging "the disclosure statement was

deficient under the Truth In Lending Act, 15 U.S.C.S. [sic] § 1638(a)(9)"), & pp. 10).

### i.  Actual Damages

Actual damages are authorized under Section 1640(a)(1) of TILA.  In order to state a

TILA claim for actual damages, a plaintiff must demonstrate detrimental reliance upon an

---

[3] Under the Federal Real Estate Settlement Procedures Act (RESPA), plaintiffs were entitled to receive notice of transfer loan servicing within 15 days of the effective date of the transfer. 12 U.S.C. § 2605(b), (c). However, plaintiffs do not assert a claim under RESPA, nor does their Complaint allege any facts suggesting that the servicing of their mortgage was transferred, only that the loan itself was transferred. The RESPA notice requirement by its terms extends only to the transfer of loan servicing, not to the transfer of ownership of the loan.

inaccurate or incomplete disclosure. <u>Gold Country Lenders v. Smith</u>, 289 F.3d 1155, 1157 (9th Cir. 2002); *see also* <u>Turner v. Beneficial Corp.</u>, 242 F.3d 1023, 1028 (11th Cir. 2001); <u>Perrone v. Gen. Motors Acceptance Corp.</u>, 232 F.3d 433, 436 (5th Cir. 2000); <u>Peeters v. Jim Lupient Oldsmobile Co.</u>, 220 F.3d 915, 917 (8th Cir. 2000). Thus, a claim for actual damages fails absent evidence showing that, but for the defendant's TILA disclosure violation, the plaintiff would either have foregone the loan completely or otherwise secured more favorable terms from a different lender. <u>Gold Country Lenders</u>, 289 F.3d at 1157.

Plaintiffs have failed to allege how the TILA disclosures they received were incomplete or inaccurate. Furthermore, plaintiffs have failed to allege any facts demonstrating or even supporting the inference that they relied to their detriment on incomplete or inaccurate TILA disclosures in deciding to take out their 2006 mortgage loan. The court declines to speculate as to the legal or factual basis for plaintiffs claim. Plaintiffs must identify the substantive provision on which they rely in bringing their claim, and must allege sufficient facts to demonstrate that their claim is not merely conceivable, but plausible. <u>Iqbal</u>, -- U.S. at --, 129 S. Ct. at 1949 (*citing* <u>Twombly</u>, 550 U.S. at 570). Plaintiffs have failed to do so, therefore, to the extent plaintiffs attempt to state a claim for actual damages under TILA, that claim should be DISMISSED.

### ii. Statutory Damages

Statutory damages are available for violations of § 1638(a)(9). 15 U.S.C. § 1640(a)(4); *see also* <u>In re Ferrell</u>, 358 B.R. 777, 787 (9th Cir. BAP 2006). Because TILA is remedial in nature, it is to be applied broadly in favor of the consumer. <u>In re Ferrell</u>, 539 F.3d 1186, 1189 (9th Cir. 2008) (*citing* <u>Jackson v. Grant</u>, 890 F.2d 118, 120 (9th Cir. 1989)). Thus, even "[t]echnical or minor violations" of TILA or its implementing regulations may impose liability on

the creditor. <u>Semar v. Platte Valley Fed. Sav. & Loan Ass'n</u>, 791 F.2d 699, 704 (9th Cir. 1986) (noting also that"[t]o insure that the consumer is protected . . . [TILA and its implementing regulations must] be absolutely complied with and strictly enforced"). However, an assignee is only held liable for those violations apparent on the face of the disclosure statement. 15 U.S.C. § 1641(e)(1)(A).

As noted above, plaintiffs have failed to allege how the TILA disclosures they received were incomplete or inaccurate. Furthermore, plaintiffs have failed to allege that the alleged violation was apparent on the face of the disclosure. The court declines to speculate as to the legal or factual basis for plaintiffs claim. Plaintiffs must identify the substantive provision on which they rely in bringing their claim, and must allege sufficient facts to demonstrate that their claim is not merely conceivable, but plausible. <u>Iqbal</u>, -- U.S. at --, 129 S. Ct. at 1949 (<i>citing</i> <u>Twombly</u>, 550 U.S. at 570). Plaintiffs have failed to do so, therefore, to the extent plaintiffs attempt to state a claim for actual damages under TILA, that claim should be DISMISSED.

### iii. Statute of Limitations

For purposes of a TILA damages claim, the failure to make required disclosures occurs on the date the loan documents are signed, because on that date the buyer is in possession of all information relevant to the buyer's discovery of the TILA violation and the basis for a damages claim. <u>Meyer v. Ameriquest Mortg. Co.</u>, 342 F.3d 899, 902 (9th Cir. 2003) ("The failure to make the required [TILA] disclosures occurred, if at all, at the time the loan documents were signed"); <u>Hallas v. Ameriquest Mortg. Co.</u>, 406 F.Supp.2d 1176, 1183 (D. Or. 2005), <i>aff'd</i>, 280 Fed.Appx. 667 (9th Cir. 2008) (same). Equitable tolling may apply in TILA damages claims to "suspend the limitations period until the borrower discovers or ha[s] a reasonable opportunity to discover the

Page 13 - REPORT AND RECOMMENDATION

fraud or non-disclosures that form the basis of the TILA action." King v. State of Cal., 784 F.2d 910, 915 (9th Cir. 1986). However, when a plaintiff fails to allege facts demonstrating that the plaintiff could not have discovered the purported TILA violation with reasonable diligence, dismissal is appropriate and equitable tolling will not apply. *See* Meyer, 342 F.3d at 902; Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996).

Plaintiffs signed the loan documents for the mortgage at issue in this case on September 11, 2006. (RJN, Ex. A, pp. 15). Plaintiffs filed their complaint on February 4, 2011, more than four years later. Plaintiffs have not alleged any basis on which equitable tolling should apply. Therefore, plaintiffs' TILA damages claims are barred by the applicable one-year statute of limitations and should be DISMISSED.

### Conclusion

For the reasons stated above, plaintiffs' TILA damages claim should be dismissed. It appears doubtful that plaintiffs can cure the deficiencies of their complaint to state a TILA claim, particularly in light of TILA's one year statute of limitations. However, plaintiffs have not yet had an opportunity to amend their Complaint. Therefore, in an abundance of caution, the court recommends that, with the exception of plaintiffs' claim under § 1641(g), plaintiffs' TILA damages claim should otherwise be DISMISSED WITHOUT PREJUDICE.

### 2. Plaintiffs' FDCPA Claim

To construe plaintiffs' Complaint as attempting to state a claim under the FDCPA strains the rule of liberal construction of pro se pleadings. It is perhaps more accurate to state that plaintiffs cite the FDCPA on page 5 of the Complaint. To the extent that this citation may be liberally construed as an attempt to state a claim, that claim fails for several reasons.

First, the claim is not alleged against either B of A or ReconTrust. Instead, the claim is alleged against EquiFirst. Plaintiffs simply allege in conclusory fashion that EquiFirst violated the FDCPA when making the loan. (Compl. at pp. 5, ¶ C). However, by plaintiffs' own admission their loan originated with ABC, not with EquiFirst. (Id. at pp. 2; RJN, Ex. A). No explanation is provided as to who EquiFirst is or how this entity is related either to ABC or to the named defendants B of A and ReconTrust. Dismissal pursuant to Rule 12(b)(6) is thus warranted as plaintiffs appear to allege this claim against an entity which is neither a party to this action nor a predecessor in interest to either named defendant.

Second, even assuming that plaintiffs had alleged this claim against either B of A or ReconTrust, dismissal pursuant to Rule 12(b)(6) is still proper as the claim is both unintelligible and lacking any supporting factual allegations. Plaintiffs have failed to identify the substantive provision which they allege have been violated; they do no more than cite to 15 U.S.C. § 1692. Moreover, plaintiffs' complaint fails to allege any facts demonstrating the existence of unlawful debt collection practices by any defendant in this action. At most, plaintiffs allege in entirely conclusory fashion that (1) their mortgage loan ceased to be a mortgage loan and instead became a stock commodity when Deutsche Bank securitized and sold it on the secondary market; (2) that as a result of being sold and securitized, plaintiffs' mortgage loan was "paid off" and the note and deed of trust securing it were "destroyed"; and (3) because the Note itself was therefore no longer enforceable, any attempts to enforce plaintiffs' contractual duty to continue to make payments according to its terms somehow violates the FDCPA. (Compl. at pp. 3-4). This claim is without merit. Plaintiffs explicitly agreed that both the Note and the deed of trust securing the Note for their September 2006 mortgage could be sold or transferred without any concomitant effect on

their contractual obligation to repay the loan. (RJN, Ex. A, pp. 11-12, ¶ 20). Plaintiffs'

conclusory allegations to the contrary is unsupported by any factual or legal basis, and is

insufficient to satisfy even the liberal pleading standards under Rule 8(a) and Iqbal. Therefore,

plaintiffs' FDCPA claim should be DISMISSED.

### 3. Plaintiffs' Wrongful Foreclosure Claim

Plaintiffs allege that the foreclosure of their property was wrongful because MERS was

not a proper party in interest and therefore had no authority to foreclose on plaintiffs property.

(Compl. at pp. 8).

Under Oregon law, a deed of trust trustee may foreclose a trust deed by advertisement and

sale in the manner provided Or. Rev. Stat. §§ 86.740 to 86.755 provided that certain conditions

are met, including the provision that "[th]e trust deed, any assignments of the trust deed by the

trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage

records in the counties in which the property described in the deed is situated." OR. REV. STAT. §

86.735.

Defendants argue that plaintiffs' wrongful foreclosure claim is defeated by the express

terms of the deed of trust, which "extends to MERS the right to enforce the Lender's interests"

which defendants assert includes but is not limited to "the right to foreclose and sell the Property;

and to take any action required of Lender . . . ." (Defs.' Mem. iso Mot. to Dismiss, pp. 6) (citing

RJN, Ex. A, pp. 3). In their response (#6) in opposition to the motion to dismiss, plaintiffs argue

only that they cannot have assigned powers to MERS under the deed of trust which are otherwise

unavailable to MERS or any other party under Oregon law.

The court finds instructive In re McCoy, -- B.R. --, --, 2011 WL 477820, *3-4 (Bankr. D.

Page 16 - REPORT AND RECOMMENDATION

Or. Feb. 7, 2011), a recent opinion where Chief Judge Alley of the United States Bankruptcy

Court for the District of Oregon faced precisely the issue presented here. There, the plaintiff

alleged claims[4] for wrongful foreclosure and to quiet title arising out of the defendants'

foreclosure of a mortgage loan plaintiff received in 2005 through BNC Mortgage ("BNC") which

was secured by a deed of trust against real property. In re McCoy, 2011 WL 477820 at *1. BNC

was named "Lender" on the deed of trust. Id. MERS was listed as the "Grantee," identified as a

separate corporation acting solely as nominee for "Lender and Lender's successors and assigns,"

and furthermore identified as the "beneficiary" of the deed of trust as "MERS (solely as nominee

for Lender and Lender's successors and assigns) and the successors and assigns of MERS." Id.

The plaintiffs alleged that their mortgage was sold repeatedly to at least four different entities.

Id. The plaintiffs further alleged that each transfer was made without recording any document in

the official county records. Then, in 2007, MERS recorded an Appointment of Successor

Trustee naming Northwest Trustee Services, Inc. ("NW Trustee") as successor trustee and an

Assignment of Trust Deed assigning the beneficial interest from MERS to U.S. Bank. Id. NW

Trustee subsequently initiated foreclosure proceedings. Id.

Chief Judge Alley found that the plaintiff had pled sufficient facts to withstand

defendants' Rule 12(b)(6) motion to dismiss where the plaintiff alleged that one or more

assignments from BNC were unrecorded. In particular, as relevant here, Chief Judge Alley

wrote:

> "MERS claims to be the beneficiary because the Trust Deed declares it the
> beneficiary. The term 'Beneficiary,' however, is defined at ORS 86.705(l) not

---

[4] The plaintiff originally filed suit in Jackson County Circuit Court, but the case was
removed first to U.S. District Court, and thereafter to Bankruptcy court. In re McCoy at * 2.

Page 17 - REPORT AND RECOMMENDATION

merely as the person named as such, but as 'the person named or otherwise designated in the trust deed *as the person for whose benefit a trust deed is given, or the person's successor in interest . . . .*' [italics added]. In the deed of trust described in and attached to the Complaint, that person is not MERS, but BNC Mortgage, the Lender. BNC Mortgage is the entity that loaned the money to Plaintiff and to whom the Plaintiff was obligated under the promissory note. Moreover, the deed of trust provides that MERS is acting solely as the nominee of the Lender.

A deed of trust may authorize delegation of the beneficiary's powers to a separate nominee, as appears to have been the case here. However, the powers accorded to MERS by the Lender--with the borrowers' consent--cannot exceed the powers of the beneficiary. The beneficiary's right to require a non-judicial sale is limited by ORS 86.735. A non-judicial sale may take place only if any assignment by BNC Mortgage has been recorded. As the Complaint sets out a plausible claim that one or more assignments from BNC Mortgage were unrecorded, the Defendants; motion to dismiss the claim for wrongful foreclosure will be denied."

In re McCoy at * 3. This is consistent with other opinions in the District of Oregon, which have consistently held that while Oregon law does not prohibit an arrangement whereby an agent appears as lienholder for the benefit of the lender and the lender's successors and assigns, if foreclosure by sale is pursued, Oregon law *does* require that all prior unrecorded assignments must be filed in connection with the foreclosure. *See* Barnett v. BAC Home Loan Serv., L.P., -- F.Supp.2d --, --, 2011 WL 723046, * 4-6 (D. Or. Feb. 23, 2011) (collecting cases); *see also* Or. Rev. Stat. § 86.735. This reasoning has been extended to claims of wrongful foreclosure brought after the plaintiff's property was sold via trustee sale. Rinehart v. Onewest Bank, FSB, Civ. No. 10-6331-AA, 2011 WL 1311839, * 3 (D. Or. Apr. 1, 2011) (finding plaintiff's allegations that not all assignments of interest were recorded at the time the defendants sold the plaintiff's property via trustee sale was sufficient to withstand defendant successor trustee's motion to dismiss on grounds that the trustee is a necessary party to any action regarding the validity of a trustee sale).

Page 18 - REPORT AND RECOMMENDATION

Here, the lender on plaintiffs' loan was ABC. As in In re McCoy, MERS was named beneficiary as a separate corporation acting solely as nominee for ABC and its successors and assigns. Like the plaintiff in In re McCoy, plaintiffs here allege that, following ABC's bankruptcy, their loan was sold to Deutsche Bank, who in turn securitized and sold the loan. It appears that plaintiffs allege that there were unrecorded assignments of beneficial interest relating to plaintiffs mortgage at the time foreclosure proceedings were initiated on their property. However, plaintiffs present this allegation in conclusory fashion, without identifying the factual basis for their claim, that is, which assignments of interest were unrecorded. Defendants' reply provides no insight into the merit of plaintiffs' claims. While defendants argue that MERS had authority to assign beneficial interest and to act as beneficiary, defendants do not respond to plaintiffs' allegations that not all assignments of interest were recorded at the time of the non-judicial foreclosure, nor do defendants address the weight of authority in this district which requires compliance with ORS § 86.735 in order for such an action to be lawful.

In sum, the court finds that while plaintiffs' Complaint in its current form fails to allege sufficient facts to support it, they have articulated a viable legal argument for wrongful foreclosure. Therefore, the court recommends plaintiffs' wrongful foreclosure claim be DISMISSED WITHOUT PREJUDICE.

### 4. Plaintiffs' Fraud Claim

In Oregon, a plaintiff bringing a fraud claim must establish: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation will be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its

truth; (8) the hearer's right to rely on the representation; and (9) injury. U.S. Nat'l Bank v. Fought, 291 Or. 201, 220-221, 630 P.2d 337 (1981) (internal citation omitted). The two-year statute of limitations on fraud claims begins to run when a plaintiff knows or should have known of the fraud. OR. REV. STAT. § 12.110(1); Mathies v. Hoeck, 284 Or. 539, 542, 588 P.2d 1 (1978). When a plaintiff alleges fraud, Rule 9(b) requires that the claim be pled specificity in order to allow the defendant to actually defend the accusation rather than simply deny it has done anything wrong. Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal citation omitted). In regard to surviving a motion to dismiss, specificity means a fraud claim requires an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Id.

To the extent plaintiffs attempt to allege a claim for fraud, dismissal is appropriate because the claim is both unintelligible and entirely lacking supporting allegations of fact. Plaintiffs' complaint fails to allege any facts relating to fraudulent conduct by either named defendant. At most, plaintiffs' allege that defendants committed fraud by attempting to collect payment from plaintiffs pursuant to the terms of the Note and deed of trust securing the Note. This is insufficient to state a fraud claim under Rule 9(b) and Iqbal. Therefore, to the extent that plaintiffs attempt to allege a claim for fraud, that claim should be DISMISSED. Although plaintiffs' Complaint does not readily suggest that plaintiffs can correct the deficiencies of their pleadings, it is not evident that granting plaintiffs leave to amend their Complaint would be futile. Therefore, plaintiffs' fraud claim should be DISMISSED WITHOUT PREJUDICE.

## RECOMMENDATION

For the reasons stated above, the court recommends defendants' request for judicial notice

(#5) be GRANTED IN PART AND DENIED IN PART; that defendants' motion to dismiss (#3)

be GRANTED; and that plaintiffs' request for leave to file an amended complaint be GRANTED

subject to the limitations set out above.

**_This recommendation is not an order that is immediately appealable to the Ninth_**

**_Circuit Court of Appeals._** Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment or appealable

order.

The Report and Recommendation will be referred to a district judge. **_Objections to this_**

**_Report and Recommendation, if any, are due by May 16, 2011. If objections are filed, any_**

**_response to the objections are due by June 3, 2011._** *See* FED. R. CIV. P. 72, 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will

be considered a waiver of a party's right to de novo consideration of the factual issues and will

constitute a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _____ day of April, 2011.

_____

MARK D. CLARKE
United States Magistrate Judge